BANGREN *v.* STATE.

(In Banc. April 24, 1944.)

[17 So. (2d) 599. No. 35495.]

888

Fred B. Smith, of Ripley, and G. C. Moreland, of Corinth, for appellant.

**Greek L. Rice**, Attorney-General, by **George H. Eth-ridge**, Assistant Attorney-General, for appellee.

892

894

Argued orally by **Fred B. Smith,** for appellant.

**McGehee, J.**, delivered the opinion of the court.

The appellant was convicted of the crime of murder, was sentenced to life imprisonment in the state penitentiary, and has prosecuted this appeal.

After a visit to the room of Marlene McKee, a sixteen year old girl, at the home of the appellant, Vernice Mae Bangren, in the City of Corinth, where young girls were permitted to come and have dates with men, one Gerald Wardlaw, a married man, was shot and killed by the said occupant of the house while she was attempting to eject him therefrom. Shortly prior to the shooting, the said Wardlaw had forcibly taken the sum of $3 from Marlene McKee immediately after having paid the same to her; thereupon an argument ensued in which the appellant also became involved and which resulted in Marlene McKee calling Wardlaw a "cheap son of a bitch" as he stood in the road or street in front of the house flourishing this money in his hand. The appellant then stated to Wardlaw, "Since you have got your money how about you going on, I don't like your kind around here." Nevertheless, he then re-entered the house and stated to the appellant that Marlene had better say that she was sorry for what she had said, whereupon the appellant required her to apologize to him and then commanded that he get out of the house and not come back any more. He replied that it was the first time that anyone had tried to tell him what to do or order him around, and that he had come back to tell her what to do. He then left, however, but presently returned, and, over the protest of the appellant, came into the front room where she and others were sitting.

Marlene McKee testified as a witness for the state that in the meantime the appellant had stated that if he came back she was going to kill the "damn son of a bitch." However, as he was again entering her home, the appellant made no attempt at that time to carry out this alleged threat, but thinking that he had perhaps left some

of his supply of whiskey in the house, from which they all had been drinking, she made inquiry in that behalf, found that he had done so, caused the residue of whiskey to be delivered to him and again commanded that he leave the premises. One word then brought on another, and whereupon the appellant contends that Wardlaw started unbuttoning his shirt and that she said to him "you wouldn't pull off your shirt to hit a girl," and that he said "no," and "started drawing back;" that she knocked his lick off and reached in a chest of drawers, obtained her pistol so as to compel him to leave the house, and that he jerked her out onto the porch, where she shot him.

There is but little conflict in the testimony, since the state witness Marlene McKee had left the room before the shooting occurred and thereafter only heard the shooting and the appellant doing some cursing, except the conflict in regard to the threat which this witness said was made by the appellant about her intention to kill Wardlaw if he came back into the house the second time, one other witness for the state having repeatedly testified that the statement of the appellant to the effect that "I will kill the son of a bitch" was made immediately after the shots were fired and before he fell to the ground out in the road, and some of the witnesses not having heard such alleged threat at all.

Under the foregoing state of facts, it is contended on behalf of the appellant that since she had requested Wardlaw to leave her home and not return, and that he thereafter returned and refused again to leave after having been further told to do so, the appellant had a right under the law to use such force as may have reasonably appeared to be necessary to eject him from her home, and was therefore entitled to a directed verdict in her favor. But we are of the opinion that it was a question for the jury to determine whether or not she used more force than reasonably appeared to be necessary for that

purpose, or whether on the other hand she killed Wardlaw in what reasonably appeared to be in her necessary self-defense, she having sought to justify the homicide on both of these grounds. However, we think that the trial court was in error in not limiting the issue for the jury to the question of manslaughter or justifiable homicide. While malice aforethought is a necessary element in the crime of murder, it does not always follow therefrom that the existence of actual malice at the time of the slaying would necessarily have the effect of rendering a particular homicide a case of murder. A person may be guilty only of manslaughter or justifiable homicide when slaying another even though the accused is mad and is bearing ill will toward his adversary at the time of the killing, if the act is done while resisting an attempt of the latter "to do any unlawful act," or after such attempt shall have failed," if such anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted, or the commission of which is then thwarted, and is nonexistent prior thereto. Each case must depend upon its own facts and circumstances. To constitute murder, the malice must precede the unlawful act which is being attempted or committed by the person killed, where the killing is done in resisting his attempt to do an unlawful act. Williams v. State, 122 Miss. 151, 84 So. 8.

. It is stated generally in 26 Am. Jur. 271, Section 170, that: "The fact that the homicide is committed in preventing an unlawful entry into a dwelling may, where the circumstances are not such as to justify the act, reduce the degree of the crime of manslaughter." In the case at bar, even though it may be said that the appellant had extended an invitation for Wardlaw and other men to visit her home, she would nevertheless have the right to revoke such invitation, as she had done so far as he was concerned, under the facts hereinbefore disclosed, and to thereafter deal with him as a wilful trespasser.

We are unable to agree that because the law was being violated in the habitation of the appellant, she should be denied the right to defend or protect it from unwarranted intrusions or trespasses as a home. She had lived there practically all of her life, and though her sins may be as scarlet, the law permits her to have a place of abode from which she may exclude all persons not wanted therein, unless they have entered under lawful right granted by the sovereign itself. Moreover, the latter are not authorized to remain therein except for a lawful purpose after being invited to leave.

Section 2225, Vol. 2 Miss. Code of 1942 (Section 995, Code of 1930), provides that: ''Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt shall have failed, shall be guilty of manslaughter.'' Here, the said Wardlaw was shot and killed while committing an unlawful act—a wilful and forbidden trespass—and while resisting an attempt of the appellant to eject him from her home. The appellant did not shoot him pursuant to her alleged threat that if he came back to the house she would kill him, but because of what transpired after he reentered the house. Suspecting that perhaps he had returned to get some whiskey which he had left in the house, as heretofore stated, she inquired as to whether such was the case, and upon learning that it was, she caused the whiskey to be turned over to him and again requested that he leave, stating that she didn't want to have any trouble with him, and showing that she had no malicious intent to do him any harm pursuant to such alleged threat, merely because he had come back to the house. And the killing occurred either in the heat of passion because of the fact that he thereafter jerked her out onto the porch while she was endeavoring by a display of her pistol to compel him to leave, or at a time when she claims to have deemed the shooting necessary to her own defense.

We are of the opinion that under the principles announced in the cases of Long v. State, 52 Miss. 23; Williams v. State, supra; Bowen v. State, 164 Miss. 225, 144 So. 230, wherein the court was applying the foregoing statute, the issue of whether or not the appellant was guilty of murder should not have been submitted to the jury but the issue to be determined should have been limited to the crime of manslaughter as requested. To permit the jury to convict of murder under the facts of this case was equivalent to ignoring the right of the appellant to eject Wardlaw from her home, using such force as reasonably appeared to be necessary for that purpose, and also the duty of the jury to convict her of manslaughter, and that crime alone, if they believed that more force was used than reasonably appeared to be necessary, unless it should be true that the jury was warranted in finding from the evidence that the killing was done in what may have reasonably appeared to be her necessary self-defense.

The case must therefore be reversed and remanded for a new trial in accordance with the foregoing views. Reversed and remanded.

### Specially Concurring Opinion.

**Alexander, J.,** delivered a specially concurring opinion.

I concur in the reversal of the case upon the asserted grounds but not upon its remand except for sentence. The jury rejected the plea of self-defense and resolved the issue of justification adversely to appellant. She was therefore found guilty of unjustifiable homicide which is either murder or manslaughter. The verdict is for murder, which, under the facts of the case, includes manslaughter. Hughey v. State (Miss.), 106 So. 361. Had the jury found a verdict for manslaughter, we should have allowed it to stand. There seems to be no reason, therefore, why our assent to a conviction for the lesser

offense should not stand, and the cause be remanded for sentence only. Oliver v. State, 5 How. 14, 6 Miss. 14; Ex parte Burden, 92 Miss. 14, 45 So. 1, 131 Am. St. Rep. 511; Martin v. City of Laurel, 106 Miss. 357, 63 So. 670; Smithey v. State, 93 Miss. 257, 46 So. 410; Jones v. State, 147 Miss. 85, 113 So. 191. This procedure is uniformly followed in some states. Reynolds v. State, 186 Ark. 223, 53 S. W. (2d) 224; Brooks v. State, 141 Ark. 57, 216 S. W. 705. Under our statute when there is a valid conviction, an error in fixing the punishment entitles a defendant only to a reversal as to the degree of punishment. 2 Miss. Code 1942, Section 2609. Defendant is in no position to complain since the judgment here is favorable to her. Compare Calicoat v. State, 131 Miss. 169, 95 So. 318. See also Grillis v. State (Miss.), 17 So. (2d) 525.

It may be that the course here advocated should not be followed in all reversals of convictions of murder, for the only alternative in some cases may be acquittal. But when as here, there was a deliberate homicide not justified as either inadvertent or in the heat of passion, and when jury have found defendant guilty not only of manslaughter but of murder, it should be affirmed as to that degree implicit in the jury's verdict.

A defendant's privilege against former jeopardy should not be enlarged to require the prosecution to be subjected to a similar hazard. To allow appellant a new trial means that she is entitled to have a second jury ratify the present conviction, with the added privilege of seeking an acquittal upon a plea of self-defense which has already been rejected. Upon the record, we have in effect said that she was guilty of manslaughter but must be again convicted before being punished.

I am authorized to state that **Justice Griffith** concurs in the foregoing views.

## Concurring Opinion.

**McGehee, J.,** delivered the concurring opinion.

I concur in the foregoing views but since they have not received the assent of a majority of the Justices, I was unable to incorporate the same as a part of the controlling opinion written by me herein.