# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-00058-COA

**CHERYL BROWN A/K/A CHERYL DENISE BROWN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/1998 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE C. GATES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | MURDER: SENTENCED TO SERVE A TERM OF LIFE IN MDOC |
| DISPOSITION: | AFFIRMED - 12/07/99 |
| MOTION FOR REHEARING FILED: | ; denied 3/28/2000 |
| CERTIORARI FILED: | ; granted 7/20/2000; dismissed as improvidently granted 9/28/2000 |
| MANDATE ISSUED: | 10/19/2000 |

BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.

SOUTHWICK, P.J., FOR THE COURT:

¶1. Cheryl Brown was convicted of murdering her husband by a Lauderdale County Circuit Court jury. She appeals alleging that the trial court erred in refusing to instruct the jury on the definition of deliberate design. We find that her argument is without merit and affirm the conviction.

## FACTS

¶2. On August 16, 1997, Larry Brown and his wife, the appellant Cheryl Brown, attended a party. This

would also be the day of Larry Brown's death. At the party the Browns began arguing; at some point Cheryl grabbed a knife and threatened Larry. Other party-goers intervened, and the knife was taken away. Immediately following the argument, Cheryl left the party and walked home. Not long after Larry followed in his car.

¶3. After arriving home, Cheryl apparently took a loaded 12-gauge shotgun and hid it in the bathroom. Larry's son, Marcus, was already home and placed a call to his aunt, Oren Chaney, at Cheryl's request. Cheryl spoke to Chaney and told her that "she better come get him or I am going to kill him." Chaney testified that she believed this to be an idle threat.

¶4. At this point, Larry returned home and the argument that had begun at the party resumed. Marcus was in his bedroom ironing clothes when he overheard Larry telling Cheryl to quit hitting him because he was lying down. Marcus also testified that he heard a bump against the wall that he thought was Larry pushing Cheryl. He also testified that he heard a "choking" sound that he assumed was Cheryl being choked by Larry. After the choking sound stopped, Marcus heard Cheryl say, "Let me go to the bathroom and get my stuff and I will leave." Larry responded, "Okay," and apparently let Cheryl up and went to the bedroom.

¶5. Marcus testified that he heard Cheryl go into the bathroom and close the door. He then heard what he thought was a giggle. Soon after Cheryl exited the bathroom, Marcus heard a shot. He went into the living room and found his father on the floor and saw Cheryl walking out the door. She apparently walked to a neighbor's house and from there telephoned the police. An officer examined Cheryl for physical trauma and was unable to find any marks that might have resulted from a struggle.

¶6. Marcus also testified that the argument between the Browns continued for at least two hours after Larry returned home from the party. At some point during this argument Larry got a knife which he used to cut the cord to one of the telephones in the house. Larry evidently often used a knife to cut the phone lines in the house. However, there was no indication that Larry used the knife to threaten Cheryl on this occasion. Also, Larry had in the past turned off the power to the house to keep Cheryl from playing music too loudly.

¶7. Defense counsel at trial appeared to be pursuing in his questions and statements a theory of self-defense. Cheryl Brown's testimony presented little factual basis for self-defense, but seemed an effort at demonstrating that the shooting was accidental. Other testimony may have adequately presented facts about the deceased's threats towards his wife, and a self-defense instruction was given. The jury was instructed on the crimes of murder and manslaughter. The jury reached a verdict of guilt for murder. Mrs. Brown appeals.

## DISCUSSION

¶8. Cheryl Brown raises only the issue of whether the trial court erred in not instructing the jury as to the meaning of deliberate design. She alleges that this omission resulted in improper instructions on the difference between murder and manslaughter.

¶9. When examining jury instructions refused by the trial court, we look at the evidence from the view of the party requesting the instruction. *Splain v. Hines*, 609 So.2d 1234, 1239 (Miss. 1992). A party has the right to have his theory of the case presented to the jury by instructions, provided that there is credible evidence that supports that theory. *Alley v. Praschak Machine Co.*, 366 So. 2d 661, 665 (Miss. 1979). The lower court enjoys considerable discretion regarding the form and substance of jury instructions. The

principal concern is that the jury was fairly instructed and that it understood each party's theory of the case. *Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990). That means that no error exists in denying an individual instruction if the jury has been properly and fully instructed by the other instructions. *Catchings v. State*, 684 So. 2d 591, 599 (Miss. 1996).

¶10. Here Mrs. Brown offered this instruction:

> The Court instructs the jury that the term "deliberate design" as used in these instructions, means an intent to kill without authority of law, not in necessary self-defense, and not formed in the heat of passion.

Part of the manslaughter instruction that was given said this:

> The Defendant, Cheryl Brown, did unlawfully, but without any deliberate design to effect his death, did cause the death of Larry Brown by shooting him in the heat of passion, during an argument or within such time after an argument that passion had not time to cool . . . .

The alleged problem of giving this manslaughter instruction but not the definition of "deliberate design" was that even if the jurors believed that she acted while in the heat of passion, they would have been required to convict so long as they also found that she acted with a deliberate design. In Brown's view of the law, an intentional killing can occur during heat of passion, and the jury needs to know that such an act is manslaughter, not murder. The evidentiary basis for the argument is that there was considerable evidence that earlier in the evening Mrs. Brown was saying that she was going to kill her husband, but that they also had a long-running and serious argument after that time. In Brown's view this intent could be overwhelmed by her anger to make the crime manslaughter.

¶11. The general issue of the interplay of manslaughter and deliberate design instructions has caused significant discussion and at times reversal in supreme court precedents. The earliest explanations for manslaughter are early indeed. The Mississippi High Court of Errors and Appeals explained that a homicide is not punishable as murder if the act was the result of heat of passion arising from anger that was so great as to overawe the will. *Preston v. State,* 25 Miss. 383, 387 (1853) (quoted in *Windham v. State,* 520 So. 2d 123, 127 (Miss. 1987)). That anger must have been induced by some "insult, provocation, or injury" that would produce in an ordinary person the "highest degree of exasperation." *Id.* That anger may in the mind of jurors equate to malice towards the victim. When another instruction explains that murder is a homicide committed with malice or deliberation, there is a fine line that must be clearly drawn.

¶12. The indictment against Cheryl Brown charged that she "wilfully, unlawfully, and feloniously and with deliberate design . . . did kill and murder Larry Brown." "Deliberate design" means a full awareness of what one is doing; it generally implies careful and unhurried consideration of the consequences along with calculation, planning and contemplation. *Windham*, 520 So. 2d at 126. It is incorrect to instruct that the design can be formed instantaneously, as that is a contradiction with the concept of contemplation. *Id.; Fears v. State,* 97-CT-00558-SCT (¶10) (Miss. November 4, 1999). There is no required time period for the malice to form, but to imply that it is adequate if the design to cause the death exists only at the instant that the fatal blow falls is to undermine the heat of passion instruction. *Blanks v. State,* 542 So. 2d 222, 227 (Miss. 1989). It is probably a logical inevitability that jurors will believe that when an accused is pulling the trigger or taking another affirmative action, that at least at that moment there is a design for the consequences that follow. Though the law provides that a person because of the heat of passion events may

have no will, that explanation must be clear in the instruction.

¶13. On the other hand, if there is not adequate evidence to support manslaughter, then an error that might otherwise arise in the giving of the two instructions is harmless. *Nicolaou v. State,* 534 So. 2d 168, 173 (Miss. 1988).

¶14. Consequently, if there is evidence upon which a jury might rely to find heat of passion, it is reversible error to give an instruction that can cause this confusion. *Id.* Brown relies on occasional statements that heat of passion manslaughter and deliberate design instructions may not be given in the same case if there is evidence for heat of passion. *Catchings v. State,* 684 So. 2d 591, 595 (Miss. 1996). That would seem an overbroad statement that must be read in context. A defendant's presenting evidence regarding manslaughter can not bar the State from presenting to the jury its instructions on the crime that is charged in the indictment. Instead, what has to be avoided is an instruction that suggests or, worse, states that the deliberate design sufficient for a finding of murder may have existed only at the moment that the homicide was committed. *Fears,* 97-CT-00558-SCT (¶ 10); *Blanks,* 542 So. 2d at 227.

¶15. That becomes clear in reviewing the earlier precedents upon which *Blanks, Williams*, and others draw their principles. The earliest discovered opinion that has been relied upon by these more recent cases held that manslaughter may be the crime even though "the accused is mad and is bearing ill will toward his adversary at the time of killing. . . ." *Bangren v.State,* 196 Miss. 887, 897, 17 So. 2d 599, 600 (1944) (discussed in *Windham*, 520 So. 2d at 126). That situation arises when the "anger or ill will is engendered by the particular circumstances of the unlawful act then being attempted" by the subsequent homicide victim. *Bangren*, 17 So. 2d at 600. A statement made in *Bangren* that a jury could be instructed that "a person may be guilty only of manslaughter or justifiable homicide," has recently been overruled. *Ferrell v. State,* 733 So. 2d 788, 791 (Miss. 1999). Quite simply an accused can not be "guilty" of justifiable homicide, as that is not a crime but instead is a complete defense. *Id.* The broader explanations in *Bangren* were not affected.

¶16. The defect in an instruction that says guilt of murder exists if "the deliberate design to kill exists but for an instant," is that it does not tell the jury that "the deliberate design to kill might exist and the killing be manslaughter." *Pittman v. State*, 297 So. 2d 888, 893 (Miss. 1974). The cure for this defect was to qualify that instruction by whatever the facts of the case present as justification or excuse. *Id.* The error is not in giving a deliberate design instruction, therefore, but in giving an incomplete one if manslaughter or other relevant issue is adequately raised by the evidence.

¶17. We now turn to whether the instructions in this case properly presented an explanation of deliberate design homicide without trampling on the right of the accused to have her view of manslaughter understood by the jury as well. The core of the murder instruction required the jury to return a verdict of murder if it found the following:

> 1. On or about April 16, 1997 in Lauderdale County, Mississippi;

> 2. The Defendant, Cheryl Brown, did wilfully and unlawfully and with deliberate design to effect his death cause the death of Larry Brown by shooting him with a shotgun.

> 3. Without authority of law and not in necessary self-defense.

After introductory language, the defendant's manslaughter instruction stated this:

2. The Defendant, Cheryl Brown, did unlawfully, but without any deliberate design to effect his death, did cause the death of Larry Brown by shooting him in the heat of passion, during an argument or within such time after an argument that passion had not time to cool.

3. Without authority of law and not in necessary self-defense,

then it is your duty to find the Defendant guilty of manslaughter.

¶18. A definition of "heat of passion" was given that described it as "an emotional state of violent and uncontrollable rage, anger, hatred, furious resentment or terror." In addition, a separate instruction provided that if Brown killed the deceased because of an *unreasonable* belief that he was going to cause serious injury to her, then that also was manslaughter.

¶19. What becomes obvious immediately is that the defect that has caused reversal in several cases is not in these instructions, namely, stating that it is sufficient if the deliberate design existed at the instant of the homicidal act. *E.g., Blanks,* 542 So. 2d at 227; *Fears,* 97-CT-00558-SCT (¶10). However, relying on the case law that we have cited here, the supreme court in a recent case explicitly took the analysis one step further. *Williams v. State*, 729 So. 2d 1181, 1184 (Miss. 1998). There was no instruction permitting a verdict of deliberate design murder if the proper intent existed solely at the instant of the homicide. Instead, this is what the jury was told:

Instruction S-1 defined murder as "the killing of a human being, not in necessary self-defense, and without authority of law, by any means or any manner, when done with the deliberate design to effect the death of the person killed." . . . .

Instruction S-4, in defining manslaughter, instructed the jury that it was "the killing of a human being in the heat of passion, without malice, in a cruel or unusual manner, without authority of law, and not in necessary self-defense."

*Williams*, 729 So. 2d at 1189-90 (Smith, J., dissenting). What *Williams* states that it adds to the analysis, beyond the instantaneous intent issue discussed in *Blanks* and *Windham*, is that the "jury simply was not instructed at all as to when malice or design to commit murder may or may not occur." *Williams*, 729 So. 2d at 1184. The court held that when a manslaughter instruction is supported by evidence and is granted, "the jury should be instructed as to how to determine the 'aforethought' portion of 'malice aforethought' or the 'deliberation' portion of 'deliberate design.' We hold that such an instruction is proper in such a case as this, and error in this case to refuse a proper instruction (D-10) thereon." *Id.*

¶20. The first distinction with *Williams* is one acknowledged by Brown's counsel in the appellate brief: an instruction similar to the one in *Williams* was not offered. Brown suggested the following short instruction:

The Court instructs the jury that the term "deliberate design" as used in these instructions, means an intent to kill without authority of law, not in necessary self-defense, and not formed in the heat of passion.

The instruction that *Williams* approved was first that malice aforethought required premeditation and deliberation; then it stated:

[deliberation means that the accused gave] consideration to the intent to kill. There is no prescribed length of time for deliberation. A killing even though intentional, committed on impulse in the heat of passion is without deliberation and without malice aforethought.

*Id.* at 1183.

¶21. There is nothing in Brown's offered instruction that would address the timing question that was the relevant portion of the *Williams* instruction. The *Williams* holding was rather precise. The "instruction is proper in such a case as this, and [it was] error in this case to refuse a proper instruction" on that point. *Id.* at 1184. Brown's denied instruction said that "deliberate design" is an 1) intent to kill, 2) without authority of law, 3) not in necessary self-defense, and 4) not formed in the heat of passion. The instructions that were given made those points, except "deliberate design" was substituted for "intent to kill." These phrases are synonymous; such interchangeable words may properly be used in a jury instruction. *Lancaster v. State*, 472 So. 2d 363, 367 (Miss.1985).

¶22. The trial judge was not in error in denying the instruction that was offered. If error there was, it arose from not determining *sua sponte* that another instruction was needed. What in effect Brown seeks is reversal based on "plain error." M.R.A.P. 28(a)(3). That is defined as an error not noted below but which infringes a fundamental right. *See* Luther T. Munford, Mississippi Appellate Practice §3.7 (1997). The general rule is that no reversible error arises from the failure to correct an erroneous instruction. *Id*. at § 3.4; *Harper v. State,* 478 So. 2d 1017, 1018 (Miss. 1985). However, if the omitted instruction relates to a fundamental issue not otherwise covered by an instruction, reversal may be required despite the failure of defense counsel to offer a proper one. *Id.*

¶23. This question of when Brown's intent to kill her husband was formed was not the central question in the case, though it may have been tangentially raised. As pointed out in our discussion of the facts, Brown's testimony described the events as an accident. The evidence regarding intent -- the telephone call to a relative, the placement of the shotgun in the bathroom, the "giggling" heard by her stepson -- were not at the instant of the homicide. They were before the shooting; the important events were more than a hour prior to the homicide. In *Williams*, on the other hand, the accused participated in "a random act of mob violence," a rather serious act of joining others in stomping the victim to death. *Id.* at 1185. After reviewing the record, the majority found little evidence relating to Williams's deliberation. Another person in the mob appeared to have initiated the violence against the victim. At what stage Williams began to kick the victim was unknown. *Id.*

¶24. We find no such uncertainty here. There is in fact no issue fairly raised by the facts as to whether Brown formed the intent to kill only at the moment of the homicide. Perhaps there was a question of whether she ever formed an intent, but the *Williams* instruction was not needed for that. Unlike in *Williams,* there was substantial evidence that Brown had formed the intent well before the killing. The jurors did not need to accept that evidence, but they did. There was no central issue for which an instruction had to be given defining the time during which deliberation must have occurred.

¶25. It is fundamental that instructions must be supported by evidence before they should be granted. *Clark v. State*, 693 So. 2d 927, 933 (Miss. 1997). Similarly, no fundamental error arises when the potential confusion that an instruction would have addressed does not exist in the evidence.

¶26. We should note that one case that we have already cited emphasizes a waiver exception:

> Where, however, the State offers and the circuit judge grants an instruction which we have clearly held is erroneous, we are not going to hold defense counsel to the same degree of diligence he has on instructions this Court has not ruled upon.

*Fears,* 97-CT-00558-SCT (¶11), quoting *Duvall v. State,* 634 So. 2d 524, 526 (Miss. 1994). What was precedentially clear in *Fears* regarding the instantaneous deliberation problem has no analogy in this case. Indispensability to a definition of deliberate design is not the import of these authorities. *Fear's* flexibility on waiver is inapplicable to the present case.

¶27. The need to define the time period for deliberation, even if not announced in *Williams*, was certainly highlighted in a new way. That Brown's counsel did not request the specific kind of instruction described in *Williams* is understandable -- the opinion was released a week after the verdict in this case. More importantly for our purposes, the facts of this case do not present the problems perceived in *Williams.*

¶28. Perhaps there is much layman's psychology in case law that attempts to explore the mind of an angry perpetrator of a homicide and determine as a legal proposition whether a murderous intent existed or instead that the mind was uncontrolled due to rage. This crime is based on intent, though, and the exploration is required. The jurors were properly guided in that exploration, and we find no reversible error.

**¶29. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.**

**McMILLIN, C.J., KING, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.**