IRVING, J.,
dissenting:
¶ 30. I respectfully dissent from the majority’s conclusion that Leffingwell was not entitled to a cautionary instruction regarding the testimony of Cindy Cook, and because of the importance of her testimony to the prosecution’s case, I would reverse and remand.
¶ 31. Leffingwell sought the following instruction:
A person criminally involved with others in a crime is an accomplice. The testimony of an accomplice is to be considered and weighed with great care, caution and suspicion. You may give it such weight and credit as you deem it is entitled.
¶ 32. The trial court refused to grant the instruction on the basis that Cindy was not an accomplice inasmuch as she was not under indictment. The majority agrees with that characterization of Cindy’s status. The record, however, in my opinion neither supports nor compels that conclusion.
¶ 33. The record reflects that Cindy’s sister called the Carroll County Sheriff Department from Memphis, Tennessee and advised that “she had some information” regarding a homicide that had occurred in Carroll County, Mississippi. It is not clear from the record whether the sister meant the sister had some information or Cindy had some information. In any event, Cindy was located and interviewed.
¶ 34. During the direct examination of Sheriff Don Gray, he was asked whether, following the interview with Cindy, he had any leads as to a suspect in the shooting, *884 and he answered, “Yes, sir. We did.” When asked if he made any “arrest for and charge for murder in this case,” he answered “Yes, sir.” Upon being asked who was arrested, he answered, “Donald Warren Leffingwell.” He failed to mentioned that Cindy had also been arrested. However, during cross-examination, the following colloquy occurred:
Q. The District Attorney asked you about an arrest. You told us about Mr. Leffingwell?
A. Yes, sir.
Q. I show you a document and ask you if that refreshes your memory about any other arrests made in this matter?
A. Yes, sir.
Q. Sheriff, there was an arrest of Cindy Lou Cook, was there not?
A. Yes, sir.
Q. And she was charged with accessory to murder?
A. Yes, sir.
Q. She was incarcerated, brought to this jurisdiction released on bond?
A. Yes, sir.
Q. The case was presented to the Grand Jury. Ms. Cook was not indicted; is that correct?
A. This case was presented. I don’t recall that Ms.—
BY [THE DISTRICT ATTORNEY]: —Your Honor, I think I’m the only one that can answer what happened in the grand jury, and I’m not on the stand. I don’t think the Sheriff is a qualified witness to answer what was done at the grand jury. (Emphasis added).
BY THE COURT: That’s true. That is sustained.
BY MR. JONES:
Q. Sheriff, as the chief law enforcement officer of Carroll County, when the recalled Grand Jury of November ’97 met April the 20th of ’98, did you serve a capias on Cindy Lou Cook for accessory to murder?
A. No, sir. I did not.
Q. You have seen her as recently as today?
A. Yes, sir.
Q. If you had such a warrant or a capias, she was within your presence that you could serve that on her?
A. Yes, sir; that’s correct.
Q. You don’t have such a document, do you, sir?
A. No, sir.
¶ 35. Cindy testified as follows:
Q. After you gave this statement [on December 10, 1997] to the Highway Patrol investigators in Holly Springs, you were arrested?
A. That’s correct.
Q. You were charged with accessory to murder?
A. That’s correct.
Q. You were transported from the Holly Springs Jail to the Carroll County Jail?
A. No, sir.
Q. Where did you go?
A. To Oxford. Oxford Jail.
Q. You stayed there?
A. For, for one night, for approximately 24 hours and then to Carroll County.
Q. When were you released from the Carroll County Jail?
A. February, the second week in February on a Sunday.
Q. So from December 10 to the second Sunday in February you remained locked up?
A. Yes, sir.
Q. You made bond and were released?
A. I made bond and was released. Yes, sir.
Q. Have you been served with a copy of an indictment?
A. No, sir.
Q. Charging you with accessory to murder or charging you with anything?
A. I was given just the warrant from-
*885 Q. —since that time?
A. No, sir.
Q. So after the Grand Jury met April the 20th, the only thing you got about being here, I guess, was a subpoena to be here?
A. That’s correct.
Q. Is it your belief that you’re unar-rested with respect to this matter?
A. No, sir.
¶ 36. During redirect examination, Cindy testified that no one offered her anything, that she came forward because she couldn’t live with it, and that “as far as I know, I am still [an] accessory to murder.”
¶ 37. The majority relies on the testimony of Sheriff Gray — that he found no evidence that Cindy was an accomplice as far as the murder was concerned — to conclude that Cindy was not an accomplice. The record reflects that during the time that Thompson was killed Cindy was the only passenger in the vehicle. During her interview with law enforcement officers on December 10, 1997, which was approximately a month following Thompson’s death, she gave a version of what transpired the evening of Thompson’s death that was radically different from the version testified to at trial. During the month immediately following Thompson’s death, she and Leffingwell were together almost that entire period. In preparation for trial, the district attorney’s office interviewed her extensively. It was apparently at this time that she gave a different version from what she related to investigators on December 10, 1997. For example, in the December 10th statement she said that she did not see Leffingwell shoot, that he got out of the truck and went out of her sight, and that she did not see the pistol used by Leffingwell until sometime later when he placed it on the seat of the truck. At trial, she testified that she saw Leffing-well angle his pistol out of the window and fire.
¶ 38. The comment of the district attorney that only he knew whether an indictment had been returned against Cindy, coupled with Cindy’s thinking that she was still charged as an accomplice and her turnabout in relating what happened during the murder of Thompson, compels me to the conclusion that the cautionary instruction should have been given. The district attorney further advised that he was not on the witness stand, apparently meaning.he was not going to advise either the court or defense counsel of Cindy’s status. His statement concerning exclusive scienter of Cindy’s status and his unwillingness to share it with others raised the specter of whether Cindy’s fate would be determined by the type of testimony she gave during trial. Either Cindy was or was not an accomplice. After all, she had been incarcerated, and remained in jail for approximately two months as an accessory to murder. She had bonded out of jail on the accessory charge, and apparently was still under bond for that charge. If there was no indecorous arrangement or understanding between the State and Cindy regarding her testimony, it bedevils me why the district attorney would not simply just advise everyone of Cindy’s status. I believe more forthrightness should be required of the State.
¶ 39. The fact that the Sheriff testified that his investigation revealed that Cindy was not actually involved in the murder does nothing to resolve the issue. First, there is nothing in the record indicating any sort of investigation of Cindy’s role vel non in the murder of Thompson other than the Sheriffs summary statement mentioned above. In fact, the record indicates that Cindy came to the authorities, not the other way around. This fact, of course, could be the proverbial two-edged sword. Cindy may have been involved and was trying to help herself by coming forward and placing all the blame on Leffingwell, or she in fact may not have been involved at all.
¶ 40. In Williams v. State, 729 So.2d 1181 (Miss.1998), cited by the majority, our Supreme Court reversed Williams’ convic *886 tion partly because of the failure of the trial court to give a cautionary instruction regarding accomplices’ testimony. In arriving at its decision, the Williams court taught:
Arnotia was much more than a passive observer. It is not necessary for an accomplice to be prosecuted, and Ar-notia may be considered to be an accomplice even though she was not prosecuted for her paoticipation or later attempts to obstruct the investigation. Furtheimore, since there was no corroboration of the testimony. of these three witnesses, other than each other, the instruction would be mandatory. See Holmes v. State, 481 So.2d 319, 322-23 (Miss.1985); Hussey v. State, 473 So.2d 478, 480 (Miss.1985); Edwards v. State, 630 So.2d 343, 343-44 (Miss.1994).
More importantly, especially as to Arno-tia’s testimony, in Ferrill v. State, 643 So.2d 501 (Miss.1994), this Court reversed and remanded the conviction for the trial court’s failure to grant a cautionary instruction based on prior inconsistent statements of the State’s witness.
In this case, all of the witness testifying had lied at some point to police officers about their own involvement in the matter. As there was error in denying the cautionary instruction in this case, the cumulative effect of this error combined with the failure to properly instruct the jury on the question of deliberation or premeditation in a case with questionable proof thereon merits reversal.
Id. at 1189. (emphasis added).
¶ 41. In my opinion, Williams, stands at least for the proposition that prosecution is not indispensable to one being an accomplice. Therefore, Cindy may be considered to be an accomplice even though she was not prosecuted. Further, inasmuch as Cindy gave a prior inconsistent statement, it would appear that Ferrill v. State, 643 So.2d 501 (Miss.1994), cited by the Supreme Court in Williams would provide persuasive authority for the propriety of granting a cautionary instruction in this case. For the reasons stated, I respectfully dissent.