# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00588-COA

**KEVIN D. BOUDREAUX, JR. A/K/A KEVIN**           **APPELLANT**
**DEWIGHT BOUDREAUX, JR. A/K/A KEVIN D.**
**BOUDREAUX A/K/A KEVIN BOUDREAUX**
**A/K/A KEVIN BOUDREAUX, JR.**

**v.**

**STATE OF MISSISSIPPI**                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/04/2014 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER AND SENTENCED TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 05/03/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**LEE, C.J., FOR THE COURT:**

## PROCEDURAL HISTORY

¶1.    Kevin Boudreaux Jr. was convicted of murder and sentenced to life in the custody of the Mississippi Department of Corrections. Boudreaux filed posttrial motions, which the trial court denied. Boudreaux now appeals, asserting the following issues: (1) the jury was not

properly instructed on deliberate design; (2) the trial court erred in excluding evidence of the victim's level of intoxication; (3) the evidence supports a manslaughter conviction; and (4) his trial counsel was ineffective.

## FACTS

¶2. On February 10, 2013, Boudreaux returned to his mobile home in Kiln, Mississippi, after attending a local Mardi Gras parade. Boudreaux was with his sister, Janell Boudreaux; his cousin, Jeffrey Hoda; and Jeffrey's girlfriend. Tandra Boudreaux, Boudreaux and Janell's other sibling, and her boyfriend, Jacob Tillman, were at Boudreaux's home, babysitting several children. There was testimony that Boudreaux had been drinking alcohol during the parade, was asleep in the car when the group arrived home, and then had to be helped out of the car.

¶3. Brittany Ellis, Boudreaux's ex-girlfriend and mother of their child, was sitting in her car on the property when Boudreaux arrived home. Brittany testified that she had seen Boudreaux at the parade, and he had asked her to come to his house afterward. Brittany stated she was sitting in her car with the door open when Boudreaux saw her, and he began hitting her with his fists. Janell and Tandra tried to pull Boudreaux off Brittany. Boudreaux then started hitting both Janell and Tandra. Jeffrey tried to calm Boudreaux down, but they began fighting. At one point, Jeffrey had pinned Boudreaux to the ground. Brittany left the scene.

¶4. According to Jacob, Boudreaux freed himself from Jeffrey and began walking toward the mobile home. Jacob heard Boudreaux state that he was going inside to get a gun. Jeffrey

2

and his girlfriend left the scene. Jacob testified that Boudreaux exited his mobile home carrying a gun. As Boudreaux walked down the stairs, Jacob saw him hit the gun several times against the porch rail. Jacob stated Boudreaux walked towards Janell and began hitting her on the head with the gun. Jacob saw Janell crouch down and cover her head with her hands. Jacob testified that Janell "kind of jumped, [and] turned towards" Boudreaux. Boudreaux then "aimed the gun at [Janell] while she was jumping up and shot her." Jacob estimated that Boudreaux was standing three feet from Janell. As Jacob turned to leave, he saw Boudreaux walk back to his mobile home. Jacob then heard another gunshot.

¶5. Naurice Summers, Boudreaux's neighbor, saw Jeffrey and Boudreaux fighting. Naurice also saw Boudreaux hit Janell with a gun, but looked away before Boudreaux shot Janell. Naurice testified that Boudreaux walked towards the mobile home, fired the gun, and then placed it on the porch. Naurice called 911.

¶6. Deputy David Dear, with the Hancock County Sheriff's Department, responded to the scene. Deputy Dear saw a gun on the top step of the stairs leading into the mobile home. The front door was open, and Boudreaux was asleep on the couch. Nathan Corr, a 911 dispatcher, received a call from Naurice indicating that Boudreaux had shot his sister.

¶7. Evidence indicated that the bullet retrieved from Janell's head was fired from Boudreaux's gun. The forensic pathologist testified that Janell had eight blunt-force traumas to her head, including lacerations and bruising, as well as abrasions on her elbows, knees, and shins. The pathologist testified that the bullet entered Janell's head behind her left ear and traveled forward, rightward, and downward before lodging near her right eye. The

3

pathologist estimated the gun was approximately two to three feet from Janell's head when fired.

¶8.     Tandra testified for the defense. She testified that when Boudreaux went inside his mobile home and came back outside, he was not carrying a gun. She saw Boudreaux and Janell fighting and Jacob trying to stop them, but did not see who fired the gun. She did hear another gunshot as Boudreaux walked back to his mobile home. On cross-examination, Tandra's testimony indicated she told the police that when Boudreaux walked toward the mobile home after fighting with Jeffrey, Boudreaux stated he was going to get a gun.

¶9.     Jeffrey also testified for the defense. Jeffrey stated that he and Boudreaux fought. When Boudreaux got up, he told Jeffrey to wait there and then walked toward the mobile home. Jeffrey testified that he never heard Boudreax mention a gun. Jeffrey admitted he and his girlfriend left before Boudreaux exited the mobile home.

## DISCUSSION

### I.     Deliberate-Design Jury Instruction

¶10.   In his first issue on appeal, Boudreaux contends that the jury was not properly instructed on deliberate design. In reviewing the giving or refusal of a jury instruction, we read all the jury instructions actually given as a whole. *Fears v. State*, 779 So. 2d 1125, 1127 (¶9) (Miss. 2000). If the instructions as a whole fairly announce the law and create no injustice, no reversible error will be found. *Id*. We first note the State claims Boudreaux objected to jury instruction S-2 on a different ground than he argues on appeal; thus, Boudreaux's argument is procedurally barred. *See Rubenstein v. State*, 941 So. 2d 735, 760

4

(¶87) (Miss. 2006). Boudreaux's objection at trial was that instructing the jury on deliberate design would confuse them since the options – murder, second-degree murder, and heat-of-passion manslaughter – required a deliberate action. On appeal, Boudreaux argues that an instruction such as S-2 is improper when a defendant is charged with deliberate-design murder and the evidence also warrants a manslaughter instruction. The State is correct that Boudreaux's objection during trial and his argument on appeal are different. Regardless of the bar, we will address Boudreaux's argument.

¶11.     Over objection, the trial court gave jury instruction S-2, which stated:

> The Court instructs the Jury that "deliberate design[,]" as it is used in these instructions, means intent to kill, without authority of law and not being legally justifiable or legally excusable. "Deliberate" always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, or contemplate. "Deliberate design" to kill a person may be formed very quickly and perhaps only moments before the act of killing the person. However, a "deliberate design" cannot be formed at the very moment of the fatal act.

> The deliberate design need not exist in the mind of the defendant for any definite time, not for hours, days, or even minutes, *but if there is deliberate design, and it exists in the mind of the defendant but for an instant before the fatal act, this is sufficient deliberate design to constitute the offense of Murder*.

(Emphasis added). Boudreaux contends that the phrase "but for an instant" confused the jury since a manslaughter instruction was also given. Boudreaux cites to *Williams v. State*, 729 So. 2d 1181 (Miss. 1998), and *Windham v. State*, 520 So. 2d 123 (Miss. 1987), for support. In *Williams*, the Mississippi Supreme Court found that "in a prosecution for deliberate design murder, where a manslaughter instruction is warranted and granted, the jury should be instructed as to how to determine the 'aforethought' portion of 'malice aforethought' or the

5

'deliberation' portion of 'deliberate design.'" *Williams*, 729 So. 2d at 1184 (¶13). The supreme court reversed since "the jury was given no guidance on the issue of how to determine the presence or absence of premeditation." *Id*. at (¶11). In *Windham*, the Mississippi Supreme Court found reversible error in giving a jury instruction stating deliberate design may be formed "at the very moment" of the fatal act. *Windham*, 520 So. 2d at 125.

¶12.    However, the Mississippi Supreme Court has upheld a jury instruction similar to the one in this case. In *Fears*, the jury instruction also used the phrase "but for an instant." *Fears*, 779 So. 2d at 1127 (¶6). The supreme court distinguished its holding in *Windham*, stating "*Windham* merely states that a deliberate design cannot be formed at the very moment of the fatal act. *Windham* mentions nothing in regard to whether a deliberate design may be formed prior to the fatal act as did the instruction here." *Id*. at 1128 (¶14); *see also Jones v. State*, 710 So. 2d 870, 877 (¶30) (Miss. 1998) ("[D]eliberate design . . . may be formed very quickly, and perhaps only moments before the act of consummating the intent."). We find instruction S-2 was a proper statement of law; thus, this issue is without merit.

## II.    Intoxication of Victim

¶13.    Boudreaux contends the trial court erred in excluding evidence of Janell's blood-alcohol content and toxicology results. Our standard of review for the trial court's admission or exclusion of evidence is abuse of discretion. *Muscolino v. State*, 803 So. 2d 1240, 1244 (¶16) (Miss. Ct. App. 2002). The State had filed a motion to exclude Janell's toxicology results. The results showed Janell's blood-alcohol content was .144% and indicated the

6

presence of marijuana. The trial court granted the State's motion, finding that the toxicology results were not relevant and would be more prejudicial than probative.

¶14. On appeal, Boudreaux argues that Janell's intoxication was relevant because the jury could have found she was the aggressor. Boudreaux is correct that in limited circumstances, the character of a victim may be relevant "where the defendant claims that the victim was the initial aggressor and that the defendant's actions were in the nature of self-defense." M.R.E. 404 cmt. However, during trial, Boudreaux stated on several occasions that self-defense was not his theory of the case. During the pretrial motion hearing concerning the toxicology reports, Boudreaux's attorney stated, "If our argument was self-defense, then it is clear that the [toxicology report] would be relevant if the defendant was claiming that it was an act of self-defense and that alcohol or narcotics affected them." The attorney further acknowledged that Boudreaux's defense was heat-of-passion manslaughter and that Janell's "drunken actions gave rise to [Boudreaux's] anger and passion and the heat of his passion." Furthermore, during opening statements, Boudreaux's attorney informed the jury that the case was not a self-defense case. And during the jury-instruction conference, Boudreaux's attorney reiterated that "this is not a self-defense case."

¶15. Boudreaux cites to several cases for support. However, the defendants in these cases relied upon self-defense as their defense. *See Newell v. State*, 49 So. 3d 66, 73 (¶18) (Miss. 2010) (The defendant's theory was self-defense; thus evidence of the victim's intoxication "could have affected the jury's understanding of [the victim's] motive or intention and [the defendant's] belief in the imminence of his danger."); *Byrd v. State*, 154 Miss. 742, 749, 123

So. 867, 869 (1929) ("The defendant may show the deceased's intoxication as bearing upon his motive or intention and the defendant's belief in the imminence of his danger."). As previously stated, Boudreaux did not argue self-defense; thus, these cases are not applicable. This issue is without merit.

### III. Evidence Supporting Manslaughter

¶16.    Boudreaux argues that there was no premeditation to commit murder; therefore, he should have been convicted of manslaughter. Specifically, Boudreaux claims his motion for a judgment notwithstanding the verdict (JNOV) should have been granted based upon his theory of "imperfect" self-defense. A motion for JNOV challenges the legal sufficiency of the evidence. "This Court will consider the evidence in the light most favorable to the State, giving the State 'the benefit of all favorable inferences that may reasonably be drawn from the evidence.'" *Jones v. State*, 991 So. 2d 629, 634 (¶11) (Miss. Ct. App. 2008) (quoting *Collier v. State*, 711 So. 2d 458, 461 (¶11) (Miss. 1998)). "The relevant question then becomes whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).

¶17.    Boudreaux argues that based upon *Wade v. State*, 748 So. 2d 771 (Miss. 1999), his murder conviction should be reduced to manslaughter. Under the theory of imperfect self-defense, "an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent great bodily harm." *Id*. at 775 (¶12).

8

¶18. We must reiterate that Boudreaux never argued the theory of self-defense (imperfect or otherwise), nor did he request a corresponding jury instruction. Thus, his reliance upon *Wade* is misplaced. Nevertheless, we find sufficient evidence existed to support the guilty verdict. "Deliberate design, as a matter of law, may be inferred through the intentional use of any instrument which based on its manner of use, is calculated to produce death or serious bodily injury." *Wilson v. State*, 936 So. 2d 357, 364 (¶17) (Miss. 2006). Whether Boudreaux had the intent to commit murder was a jury question. *Boyd v. State*, 977 So. 2d 329, 335-36 (¶23) (Miss. 2008). The evidence showed that Boudreaux, after fighting with several people, entered his mobile home to retrieve a gun. After retrieving the gun, Boudreaux hit Janell several times on her head with the gun. Boudreaux then shot Janell in the head, with the bullet entering behind her left ear, indicating that Janell was at least partially turned away from Boudreaux. This issue is without merit.

### IV. Ineffective Assistance of Counsel

¶19. In his final issue on appeal, Boudreaux argues his trial counsel was ineffective because he failed to request a jury instruction on accident or misfortune as an alternate defense to manslaughter. This Court rarely reviews ineffective-assistance-of-counsel claims on direct review. *Aguilar v. State*, 847 So. 2d 871, 878 (¶17) (Miss. Ct. App. 2002). However, we "will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Id*. In this instance, both parties have stipulated to the

9

latter; thus, we will review Boudreaux's claim.

¶20.    If we do not reverse on other grounds and are unable to conclude that the defendant received ineffective assistance of counsel, we will affirm "without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings." *Colenburg v. State*, 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App. 1999).    Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. *Id*. at 1102 (¶6).

¶21.    To prove ineffective assistance of counsel, Boudreaux must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).    There is a strong presumption that a counsel's performance falls within the range of reasonable professional assistance. *Id*. at 689.    To overcome this presumption, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

¶22.    Boudreaux contends there was an evidentiary foundation for an accident instruction; thus, his trial counsel was ineffective for failing to request such an instruction.    Boudreaux claims the evidence showed that Jacob attempted to knock the gun from Boudreaux's hand and that Jacob was near Janell just before the first shot—thereby allowing the jury to infer that the gun accidentally fired.    During direct examination, Naurice stated that Boudreaux exited the mobile home with the gun and ran around Jacob.    Jacob then "did that with his arm or something.    I don't know if he was trying to knock the gun away from [Boudreaux]."    On

cross-examination, when asked if Jacob was trying to get the gun, Naurice responded, "No. I think he tried to knock it out of his hand or get out of his way or something." On redirect, Naurice clarified that he did not see Jacob grab anything, that Jacob "was getting the heck out of the way." Although Jacob may or may not have tried to grab the gun from Boudreaux when he exited the mobile home, the evidence was clear that Boudreaux went directly to Janell, began hitting her with the gun, then shot her in the back of the head. There was no testimony that Jacob or anyone else was interfering with Boudreaux once he began hitting Janell in the head such that the jury could infer the gun was accidentally discharged.

¶23. We cannot find that Boudreaux has established a reasonable probability that, had his attorney requested an accident instruction, the jury verdict would have been different. We find nothing in the record to show Boudreaux's trial counsel's performance was deficient; thus, Boudreaux's ineffective-assistance-of-counsel claim is dismissed without prejudice to his right to later raise the issue in postconviction proceedings if he so chooses.

¶24. **THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**